PEOPLE v SIMON

Docket No. 103955. Submitted November 2, 1988, at Grand Rapids.
    Decided February 6, 1989. Leave to appeal applied for.

    Bobby E. Simon was convicted of burning real property and
    burning insured property, Branch Circuit Court, Michael H.
    Cherry, J. The court denied defendant's motion for a new trial.
    Defendant appealed, alleging that the prosecutor failed to meet
    his burden of proof of arson by ruling out faulty wiring as the
    cause of the fire and by failing to find a residue of an acceler-
    ant, that the prosecutor improperly expressed his personal
    belief in defendant's guilt and made other inflammatory re-
    marks to the jury, that he is entitled to a new trial because of
    the prosecutor's failure to produce an alleged res gestae wit-
    ness, and that the court erred in allowing questioning of
    defendant's accountant which breached the accountant-client
    privilege.

    The Court of Appeals held:

    1. The prosecutor's evidence of arson was sufficient. Fire
    investigators need not investigate all remotely possible causes
    of a fire for which no evidence exists in order to sustain a
    conviction of arson. Nor is proof of arson insufficient as a
    matter of law where no residue of an accelerant is found by
    investigators.

    2. The test of whether prosecutorial misconduct requires
    reversal is whether the defendant was denied a fair and impar-
    tial trial. The question of the propriety of a prosecutor's re-
    marks in argument is dependent upon all facts of the case. A
    statement should not be taken out of context and the prose-
    cutor's remarks should be evaluated in light of the relationship
    or lack of relationship they bear to the evidence admitted at
    trial. Prosecutorial remarks which might otherwise be im-

REFERENCES

Am Jur 2d, Accountants § 13; Appeal and Error §§ 850, 896; Arson
    and Related Offenses §§ 46, 48; Trial §§ 218 et seq.
Privileged communications between accountant and client. 33
    ALR4th 539.
Propriety and prejudicial effect of prosecutor's argument to jury
    indicating his belief or knowledge as to guilt of accused. 88
    ALR3d 449.

proper may not require reversal where they address issues raised by defense counsel. The remarks complained of were in response to defense counsel's remarks and do not require reversal.

3. Defendant stipulated to the witness' unavailability at trial and, thus, conceded the prosecutor's due diligence in attempting to locate him. Further, the trial court properly found that defendant was not prejudiced by not producing the witness. No reversal is necessary.

4. The statute creating an accountant-client privilege is limited in application to communications made by a client to a certified public accountant. There was no evidence that the accountant questioned was a certified public accountant.

Affirmed.

1. NEW TRIAL — WEIGHT OF EVIDENCE.

A claim that the verdict is against the great weight of the evidence can be raised only in a motion for a new trial; an appellate court will reverse a conviction on this issue only where there was an abuse of discretion in denying the motion for a new trial; that is, where the denial was manifestly against the clear weight of the evidence.

2. ARSON — EVIDENCE — ACCELERANTS — INVESTIGATIONS.

Proof of arson is not insufficient as a matter of law where no residue of an accelerant is found by investigators; fire investigators need not investigate all remotely possible causes of a fire for which no evidence exists in order to sustain a conviction of arson.

3. CRIMINAL LAW — PROSECUTORIAL COMMENT — APPEAL.

The test of whether prosecutorial misconduct requires reversal is whether the defendant was denied a fair and impartial trial.

4. CRIMINAL LAW — PROSECUTORIAL COMMENT.

The question of the propriety of a prosecutor's remarks in argument is dependent upon all the facts of the case; a statement should not be taken out of context and the prosecutor's remarks should be evaluated in light of the relationship or lack of relationship they bear to the evidence admitted at trial.

5. CRIMINAL LAW — PROSECUTORIAL COMMENT.

Prosecutorial remarks which might otherwise be improper may not require reversal where they address issues raised by defense counsel.

6. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES.

Generally, the prosecutor must produce endorsed witnesses unless

he is relieved of that duty by showing an inability to produce
that person after the exercise of due diligence; due diligence
means doing everything reasonable, not everything possible;
what is required for a finding of due diligence depends on the
particular facts of each case.

7. EVIDENCE — PRIVILEGE — ACCOUNTANT-CLIENT PRIVILEGE.
    The statute creating an accountant-client privilege is limited in
    application to communications made by a client to a certified
    public accountant (MCL 339.713; MSA 18.425[713]).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *John L. Livesay,* Prose-
cuting Attorney, and *J. Ronald Kaplansky,* Assis-
tant Attorney General, for the people.

*Raymond R. Burkett,* for defendant.

Before: WAHLS, P.J., and McDONALD and R. I.
COOPER,* JJ.

R. I. COOPER, J. Defendant appeals his jury con-
victions for burning real property, MCL 750.73;
MSA 28.268, and burning insured property, MCL
750.75; MSA 28.270, in connection with the fire
which destroyed defendant's business, the Matte-
son House Bar in Bronson, Michigan. Defendant
received concurrent prison terms of from six to ten
years on both convictions.

The trial record reflects that defendant and his
wife closed the bar about 1:00 A.M., and left the
building about 1:30 A.M., after counting receipts
and readying the register for the next day. At
about 2:00 A.M., the fire was discovered by a resi-
dent of a home located about one-quarter mile
away.

When the fire department arrived at about 2:15
A.M., the fire was confined to the "older portion" in
the southwest corner of the building, part of which

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

was used as an office. At that point the fire had already penetrated the roof. Fire fighters' attempts to confine the fire so as to avoid the mainly steel constructed addition to the building were unsuccessful. The fire suddenly accelerated in a direction opposite to the wind.

An agent of defendant's insurance carrier testified that, about three weeks prior to the fire, defendant purchased new insurance on the bar which increased the fire protection limits from $140,000 to $210,000. Defendant declined liquor liability coverage, which had been included in previous policies. Nevertheless, the premium costs increased by $2,000 over the previous policies. Defendant's sworn statement of loss, which he submitted after the fire, totaled $316,596, an amount above the purchased insurance limits.

The prosecutor presented evidence of defendant's desperate financial condition. The bar, a new business, consistently lost money and required defendant to loan the corporation money to cover its monthly payments. Payments on the land contract and mortgage were in arrears. Defendant stipulated that taxes on the property were delinquent. Arrearages in defendant's child support obligation had grown to over $7,000, and a bench warrant had been issued for defendant's arrest after he failed to appear for a show cause hearing concerning his child support.

Defendant contended that the fire did not result from arson, but was caused by faulty wiring in the building in combination with the poor condition of the wood in the old portion of the building. Defendant produced testimony concerning problems with the electricity at the bar, which included sparks, flickering of lights, and a problem with the furnace emitting smoke.

In defendant's first two issues, he argues that

the prosecutor failed to sustain his burden of proof concerning the cause and origin of the fire. It is unclear whether defendant's argument addresses the sufficiency of the evidence or charges that the verdict was against the great weight of the evidence. Because defendant argued this issue both in a motion for a directed verdict and a motion for new trial, we will address it using the stricter standard applicable to reviewing a denial of a motion for new trial based on the verdict being against the great weight of the evidence.

The standard of review applicable to a denial of a motion for a new trial is whether the trial court abused its discretion. The trial court may grant a new trial if it finds the verdict was not in accordance with the evidence and that an injustice has been done. *People v Hampton,* 407 Mich 354, 373; 285 NW2d 284 (1979), cert den 449 US 885 (1980). An appellate court will find an abuse of discretion only where the denial of the motion was "manifestly against the clear weight of the evidence." *People v Ross,* 145 Mich App 483, 494; 378 NW2d 517 (1985).

The prosecutor presented evidence concerning the incendiary origin of the fire through fire investigators, who each relied in part on the process of elimination before concluding that the fire was caused by arson. The three prosecution investigators, all qualified as experts, listed many reasons to conclude the fire was intentionally set using an accelerant. The "pour pattern" was consistent with this theory. One expert testified that the floor burned from the top down to the joists, and another indicated that burning occurred under the bar's freezer. These facts indicated a flammable liquid had been poured on the floor and ignited. The speed with which the fire penetrated the roof and its burning in a direction opposite the wind

further supported an incendiary origin and use of accelerants.

Defendant complains that the investigation was not thorough enough to rule out an electrical cause. There was evidence produced at trial which indicated that the bar's electrical wiring was old and in places poorly insulated. Defense counsel thoroughly cross-examined the experts concerning their "failure" to call an electrical expert to aid in the investigation. The expert stated the reason for not doing so was a lack of evidence to indicate the fire originated in the electrical system.

After reviewing the whole record, we find no injustice and affirm the trial court's exercise of discretion in denying defendant's motion for new trial. We decline defendant's invitation to hold that, where no residue of an accelerant is found, the proof of arson is insufficient as a matter of law. Such a ruling would merely allow an arsonist to escape punishment where the fire successfully destroys detectable amounts of residue. Further, we refrain from holding fire investigators responsible to investigate all remotely possible causes of a fire for which no evidence exists. The failure to call in an electrical expert was properly a subject of cross-examination to test the credibility of the experts' findings. The jury was aware of what was and was not done in the investigation and was not required to believe the prosecution witnesses.

Finally, we find that the expert opinions did not conflict in such a fashion as to lead the jury to speculate concerning the origin of the fire. While the testimony varied on some points, all prosecution experts agreed that the fire began in the southwest corner of the building by ignition of an accelerant.

Defendant next complains that the prosecutor acted improperly by expressing his personal belief

in defendant's guilt and making remarks calculated to inflame the passions of the jury. The test for prosecutorial misconduct is whether defendant was denied a fair trial. *People v Bairefoot,* 117 Mich App 225, 228; 323 NW2d 302 (1982); *People v Thomas,* 86 Mich App 752, 764; 273 NW2d 548 (1978), lv den 406 Mich 971 (1979), cert den 446 US 911 (1980). The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's closing argument should be read as a whole and evaluated in light of its relationship, or lack thereof, to the evidence admitted at trial. *People v Cowell,* 44 Mich App 623, 627; 205 NW2d 600 (1973). Remarks which might otherwise be improper may not require reversal when they address issues raised by defense counsel. *People v Wise,* 134 Mich App 82, 103; 351 NW2d 255 (1984), lv den 422 Mich 852 (1985); *People v Jansson,* 116 Mich App 674; 323 NW2d 508 (1982).

Our review of counsels' closing arguments reflects that each of the complained-of remarks by the prosecutor were in response to defense counsel's argument. In his closing argument, defense counsel accused the prosecutor of presenting witnesses knowing they would perjure themselves. He further asserted that the prosecution against defendant was begun to protect the interests of the insurance company and because defendant was poor.

In our view, the prosecutor properly responded to these arguments by highlighting what the evidence supported while refraining from personally vouching for defendant's guilt. His comment that his decision to prosecute an accused was not based on money was a reasonable response to defense counsel's charge. We find no error.

Defendant next argues that he is entitled to a new trial based on the prosecutor's failure to

produce Deputy Ludwick, an alleged res gestae witness. On the night of the fire, two people on a motorcycle were seen nearby. Two deputies, Deputy Barnhart and Deputy Ludwick, spoke with the couple. At the time of trial, Ludwick had become dissatisfied with law enforcement and had left the Branch County Sheriff's Department, disappearing somewhere in the western states. However, Barnhart was present at trial and testified concerning the encounter with the couple on the motorcycle. Barnhart testified that, upon questioning the couple, they stated that they had come to watch the fire. Barnhart had detected no odor of common accelerants on the couple.

In defendant's motion for a new trial, he raised the issue of Ludwick's nonappearance, claimed he was a res gestae witness and sought dismissal based on the prosecutor's failure to produce him.

The circuit court found that the prosecutor had acted with due diligence in attempting to produce Ludwick for trial. Further, the court found that Ludwick's presence was not required in order for defendant to have a fair trial because the presence of the couple on the motorcycle was known to the jury and it was left to them to determine whether any reasonable doubt existed that defendant started the fire.

We note that the res gestae statute, MCL 767.40, 767.40a; MSA 28.980, 28.980(1), was amended by 1986 PA 46 effective prior to the trial in this matter. In a manner strikingly similar to *People v Cummings,* 171 Mich App 577; 430 NW2d 790 (1988), both prosecutor and defense counsel ignored the change in the law, and proceeded as if the old rule still controlled.

As was required by the version of MCL 767.40; MSA 28.980 then in effect, Ludwick was endorsed on the information which was filed in April, 1985.

The prosecutor failed to comply with the thirty-day notice requirement under the amended version of the statute, although it had been in effect for nearly a year by the time of defendant's 1987 trial. MCL 767.40a(3); MSA 28.980(1)(3). As in *Cummings, supra,* defendant made no objection to this deficiency.

Generally, the prosecutor must produce endorsed witnesses unless he is relieved of that duty by showing an inability to produce that person after the exercise of due diligence. See *People v Dye,* 431 Mich 58; 427 NW2d 501 (1988). Due diligence has been defined as doing everything reasonable, not everything possible. *Cummings, supra,* p 585. What is required for a finding of due diligence depends on the particular facts of each case. *Dye, supra.*

In the instant case, defendant stipulated to Ludwick's unavailability at trial. We believe he thereby conceded the prosecutor's due diligence in attempting to locate Ludwick. We decline to allow defendant an appellate parachute fashioned from the fiber of his own agreement. Further, the record reflects that the prosecutor's efforts included contacting Ludwick's relatives and prior coworkers in the area. No one had a clue about where the witness had gone except somewhere in one of the western states.

We further find that the trial court properly exercised its discretion in finding that defendant was not prejudiced by Ludwick's nonproduction. Ludwick was one of two officers who spoke with the mysterious motorcyclists. Defendant wished to suggest that someone else had started the fire after he left the bar. The motorcyclists' presence was a handle upon which to hang this theory. The main problem with this theory, however, was that the bar showed no signs of forcible entry.

We conclude that Ludwick's testimony would have been largely cumulative to Barnhart's and would not have aided defendant in this theory of defense. If the presence of these two people did not raise a reasonable doubt, their identity would not likely have helped. We find no cause to reverse on this issue.

Defendant alleges that the prosecutor impermissibly argued that Ludwick's unavailability supported his case. Defendant cites no particular portion of the prosecutor's argument to support his complaint. After reviewing the arguments of counsel, we find no such argument was made, and defendant made no objection to anything the prosecutor said which might indirectly relate to Ludwick's absence at trial.

Defendant next argues that the trial court erred by allowing questioning of defendant's accountant which required a breach of the statutorily recognized accountant-client privilege contained in MCL 339.713; MSA 18.425(713). That statute requires written permission of the client, or one standing in the shoes of the client, before a certified public accountant may disclose information concerning an examination, audit or report which the accountant was employed to make. Because this accountant-client privilege is in derogation of the common law, it is strictly construed, and the scope of the privilege is subject to a number of limitations and restrictions. See *People v Safiedine,* 163 Mich App 25, 30-31; 414 NW2d 143 (1987), lv den 430 Mich 863 (1988).

The statute, by its terms, is limited in application to communications made by a client to a certified public accountant (CPA) or a CPA's employee. Nowhere in the record before us do we find anything to indicate that defendant's accountant was a CPA or employed by a CPA. It only appears

that the accountant was hired to keep the books for the corporation. We therefore conclude that defendant failed to bring the communications to his accountant within the statutory privilege.

Affirmed.